REGAN, Judge.
Plaintiff, Jones & Laughlin Steel Warehouse Division, Jones & Laughlin Steel Corp., instituted this suit against the defendants, Studio Arms, Inc., the owner, Para Inc., the contractor and its surety, Trinity Universal Insurance Company, endeavoring to recover the sum of $627.69, representing the balance due to plaintiff for partial performance on an apartment building subcontract, which was ultimately rescinded by mutual consent because a labor strike prevented performance. Plaintiff also sought to recover attorney’s fees.
The defendants’ answer consisted of a general denial. Then, assuming the position of plaintiffs in reconvention, Studio Arms, Inc. and Para Inc. asserted that plaintiff had breached the contract and as a result thereof, they had incurred damages in the sum of $27,858.69, for which plaintiff was liable.
From a judgment in favor of plaintiff in the sum of $627.69, and which dismissed both plaintiff’s claim for attorney’s fees and the reconventional demand, the defendants have prosecuted this appeal.
On June 30, 1959, the plaintiff entered into a contract with Para Inc., a general contractor who was engaged in supervising the construction of an apartment building, wherein plaintiff was to furnish, fabricate and erect the steel frame thereof.
The agreement was negotiated on plaintiff’s behalf by James K. Hess, its sales engineer, and executed by Hess and F. L. Stewart, plaintiff’s president. Francois de *499 la Barre, an attorney and mechanical engineer, who was president of both the owner and the contractor defendant corporations, signed the agreement on behalf of Para. Contained therein was a provision to the effect that plaintiff would not be held responsible for delay in delivery occasioned by a strike.
The parties agreed that plaintiff was to redesign the structural steel frame of the building for the puropse of utilizing materials that plaintiff had in its New Orleans warehouse and the plans were to be completed during the first week of August of 1959.
On July 15, 1959, a general strike of steelworkers occurred on a nationwide scale, and as a result thereof, plaintiff was unable to fabricate the parts it needed to fulfill its contract with Para. Plaintiff’s warehouse was being picketed and no materials could be removed therefrom without incurring the wrath of the union, with whom management at this time was attempting to settle the controversy which provoked the strike.
Plaintiff completed the drawing for defendants’ building on August 6, 1959, approximately on schedule, and submitted it to Lewis Clements, Para’s architect, for approval.
On August 15, 1959, it was obvious to both the plaintiff and the defendant contractor that plaintiff was prevented from performing as a result of the strike; therefore, Para entered into an agreement with the Milan Engineering Company on August 17, 1959 to perform the contract plaintiff could not complete. Milan used, with minor alterations, the drawings made by plaintiff and fulfilled the contract.
There exists a serious dispute concerning the agreement between the representatives of the contracting parties at the time Para procured the services of another steel firm. Plaintiff contends that the parties mutually agreed to rescind the contract, while the defendant contractor insists that it formally placed the plaintiff in default for actively breaching the agreement of June 30th.
Hess, who is not employed by plaintiff in any capacity at this time, testified that Para’s president, de la Barre, requested that Jones-Laughlin withdraw from the contract so that he could procure the services of a firm unaffected by the strike. Hess agreed to this suggestion on the condition that plaintiff would be paid for performance rendered thereon to date, namely, the revision of the structural steel plans and the furnishing of anchor bolts for the foundation of the building.
de la Barre conversely asserts that plaintiff’s representative deliberately misled him to believe that plaintiff could perform its contract and that it was not until the middle of August that Hess finally admitted performance was out of the question because of the strike. He then advised Hess that he would hold plaintiff liable for damages incurred through plaintiff’s non-performance because despite the strike clause in the written contract, Hess had assured him both before and after the signing thereof that plaintiff could perform, even in the event that the then pending steel strike would materialize.
Although the versions of the negotiating parties are diametrically opposed, the record supports Hess’ testimony to the effect that the contract was rescinded on August 15, 1959 by mutual consent.
Lewis Clements, defendants’ architect, testified that Para sought the services of another steel firm on August 1, 1959, since de la Barre thought the strike would prevent plaintiff’s performance, and at this time plaintiff had not fallen behind on its scheduled performance inasmuch as four weeks had been allowed for revising the plans. Before the steel could be fabricated for the job, it was necessary that Clements approve the revision.
The second factor which supports plaintiff’s contention of recision is a letter dated *500 August 19, 1959, directed to defendant contractor by Hess, which reads in part:
“As a result of work stoppage at our local plant and in view of the owner’s urgent need of material and our inability to perform in the time specified, it has been agreed by parties concerned to discharge our contract dated June 30, 1959 covering fabrication and erection of structural steel * *
This was written to confirm the verbal agreement to rescind made several days prior thereto.
In addition to this, de la Barre authorized payment of $680.22 in response to plaintiff’s invoice for partial performance of the contract in the total amount of $1307.91. de la Barre explained the payment by stating that Milan Engineering Company had allowed the contractor a credit of more than $600 for the drawings which plaintiff had prepared and Milan used. He said the balance of the payment was for the anchor bolts. Payment was received by plaintiff on October 6, 1959.
Had de la Barre not agreed to rescind the contract, we do not think he would have tendered partial payment to the plaintiff, especially since the Milan bid for the same job was approximately $4-,000 higher than plaintiff’s had been. It will be recalled that de la Barre is an attorney as well as an engineer, and it taxes our credulity to believe that a man possessing the knowledge implied by his professions would pay one-half the amount of an invoice rendered for partial performance of a contract if in fact it had been breached, when his company would have had a right of action to recover damages that would greatly exceed the amount due to plaintiff.
Predicated on this evidence, the trial judge obviously concluded that the parties had mutually agreed to rescind the contract and accordingly awarded plaintiff the balance due by defendants for its partial performance. The record fully supports this finding.
The defendants initially disputed the reasonableness of plaintiff’s invoice for partial performance of the contract; however, in oral argument before this court counsel for the defendants has conceded the correctness of the balance due to plaintiff, that is, the sum of $627.69. He stated that the defendants were only concerned on appeal with the trial court’s dismissal of the re-conventional demand; therefore, it is unnecessary for us to discuss the correctness of plaintiff’s demand.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.